IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO.

| | |
|---|---|
| NATASHA TORRES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## I. PARTIES, JURISDICTION AND VENUE

1. This is a medical malpractice action.

2. The plaintiff Natasha Torres resides in Jacksonville, Onslow County, North Carolina which is within the jurisdiction of this Court.

3. The defendant is the United States of America.

4. The Federal District Court has jurisdiction of the cause because the action is brought pursuant to and in compliance with 28 U.S.C. §§ 1346(b), 2671-2680 et seq., commonly known as the Federal Tort Claims Act, which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in the Federal District Court.

5. Venue is proper in this division of the district pursuant court to 28 U.S.C. § 1391(e) as the United States is a Defendant, a substantial part of the events or omissions giving rise to the claim occurred in this division, and the plaintiff resides in this division.

## II. LIABILITY OF THE UNITED STATES OF AMERICA

6. This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§ 2671-2680 commonly referred to as the Federal Tort Claims Act. Liability of the United States is predicated specifically on Title 28 U.S.C. §§

1346(b) and 2674 because of the personal injuries and resulting damages the plaintiff suffered as a proximate result of the negligence, wrongful acts and/or omissions of employees of the United States of America at the Naval Hospital Camp LeJeune, Jacksonville, North Carolina while acting within the course and scope of their offices or employment, under circumstances where the United States of America, if a private person, would be liable to the plaintiff in the same manner and to the same extent as a private individual under the laws of the State of North Carolina.

### III. JURISDICTIONAL PREREQUISITES

7. The plaintiff pleads pursuant to Title 28 U.S.C. §§ 2672 and 2675(a) that this claim as set forth herein was presented administratively to the defendant's agency the United States Navy on August 6, 2013. On February 13, 2014, the United States Navy, by and through its office of the Judge Advocate General, served by certified mail a letter denying any liability under the Federal Tort Claims Act. Accordingly, the plaintiff has complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

### IV. THE NAVY IS AN AGENCY OF THE UNITED STATES

8. The United States Navy is an agency of the United States of America. The United States of America, through its agency, the United States Navy, at all times relevant herein, owned, operated and controlled the health care facilities know as Naval Hospital Camp LeJeune and through its agency, the United States Navy, staffed said health care facilities with its agents, servants, and/or employees.

### V. EMPLOYMENT AND COURSE AND SCOPE

9. At all times relevant herein, all persons involved in the medical care and services provided to the plaintiff, specifically Michelle L. Huebner, MD LT USN, at the Naval Hospital Camp LeJeune located in Jacksonville, N.C. were agents, servants, and/or employees of the

Department of the Navy, United States of America, or some other agency thereof, and were at all times relevant herein, acting within the course and scope of such employment.

## VI. FACTS

10. This is a Federal Tort Claims Action for monetary damages sustained by the plaintiff resulting from personal injuries as a result of substandard and, therefore, negligent medical care.

11. The plaintiff suffers from a documented history of hereditary angioedema, an inherited disorder that causes episodic attacks of swelling of her airway that left untreated will cause serious injury or death.

12. At all times relevant herein, the emergency department physicians at Naval Hospital Camp LeJeune knew the plaintiff suffered from hereditary angioedema of the airway as, among other things, said condition was documented in her medical chart.

13. On November 23, 2011, the plaintiff presented to the emergency department at Naval Hospital Camp LeJeune complaining of, among other things, throat swelling, difficulty swallowing and sore throat. As documented in her chart, the plaintiff informed the medical staff she suffered from hereditary angioedema.

14. Matthew D. Barker, MD LCDR USN examined the plaintiff and found she had throat swelling suggestive of an acute episode of hereditary angioedema of the airway. Dr. Barker admitted the plaintiff to the emergency department for observation. The swelling in the claimant's airway continued to progress over approximately the next hour. As a result, the plaintiff was intubated to establish and secure an airway.

15. The plaintiff thereafter was transferred to New Hanover Regional Medical Hospital and admitted to the intensive care unit. The plaintiff made a full recovery from her acute episode of hereditary angioedema and was discharged on November 28, 2011.

16. Two months later, on January 24, 2012 at approximately 11:14 a.m., the plaintiff presented again to the emergency department at Naval Hospital Camp LeJeune with her husband, Victor Torres, Petty Officer Third Class. The plaintiff was experiencing throat swelling, sore throat and difficulty swallowing – the identical symptoms as her November 23, 2011 visit to the emergency department. The plaintiff and her husband informed the medical staff of these complaints, her past medical history of hereditary angioedema, and the acute episode of November 23, 2011 requiring intubation and hospitalization in an intensive care unit.

17. Michelle L. Huebner, MD LT USN examined the plaintiff and found, among other things, the plaintiff had throat swelling. Id. The plaintiff and her husband both informed Dr. Huebner that the plaintiff suffered from hereditary angioedema of the airway and had just been to the emergency department two months earlier with an acute episode that required intubation and transfer to an intensive care unit of a regional hospital. Both the plaintiff and her husband told Dr. Heubner that the plaintiff's symptoms and complaints were exactly the same as at the plaintiff's previous presentation to the emergency department two months earlier.

18. Despite the plaintiff's documented medical history of hereditary angioedema, her previous acute episode of hereditary angioedema two months earlier requiring intubation and admission to an ICU, and a clinical finding of, among other things, throat swelling, Dr. Hueber diagnosed the plaintiff as suffering from tonsillitis. When informed by Dr. Hueber of her diagnosis, both the plaintiff and her husband again stated that they thought the plaintiff was suffering from another acute episode of hereditary angioedema. Dr. Hueber told the plaintiff and her husband they were overreacting and reassured the claimant and her husband that the plaintiff was suffering from tonsillitis. The plaintiff was discharged at or about 12:57 p.m.

19. The plaintiff and her husband drove home to their apartment in Jacksonville, N.C. After getting home, the plaintiff's acute episode of hereditary angioedema progressed rapidly

and her airway closed, depriving the plaintiff of oxygen. The plaintiff became unconscious. Her husband called 911 and began administering CPR. Onslow County Emergency Services arrived at or about 2:27 p.m. and found the claimant pulseless, not breathing and in cardiac arrest. Due to her extremely swollen airway, the emergency responders could not intubate the claimant. The claimant remained unconscious throughout her transport to Onslow Memorial Hospital.

20. At Onslow Memorial Hospital, the plaintiff was intubated in the emergency department, put on respiratory support and admitted to the intensive care unit until her transfer to Vidant Medical Center in Greenville, N.C.

21. At Vidant Medical Center, the plaintiff was diagnosed with, among other things, acute airway compromise, cardiac arrest and neurological impairment secondary to hereditary angioedema of the airway. In addition, imaging studies of plaintiff's brain revealed diffuse brain edema or swelling with grey-white matter border loss indicative of an anoxic brain injury.

22. On February 3, 2012, the plaintiff was discharged from Vidant Medical Center with physician orders for, among other things, in-home physical and occupational therapy, and neurological consultation and therapy secondary to the plaintiff's anoxic brain injury. The plaintiff was dependent with all activities of daily living and child care.

### VII. CAUSE OF ACTION AGAINST THE UNITED STATES OF AMERICA

23. The allegations contained in paragraphs 1 through 22 are incorporated by reference.

24. The plaintiff objects to the prefiling requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure. Rule 9(j) effectively requires plaintiff to prove her case before factual discovery is even begun, denies medical malpractice plaintiffs their rights of due process of law and equal protection under the law, the right to open courts, and the right to a jury trial, violates the separation of powers, and confers an exclusive emolument on health care providers in violation of the United States and North Carolina Constitutions. Rule 9(j) violates the Seventh

and Fourteenth Amendments of the United States Constitution, and Article I, sections 6, 18, 19, 25 and 32 and Article IV, sections 1 and 13 of the North Carolina Constitution.

25. Without waiving these objections, counsel for the plaintiff provides the following information to comply with the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure: the medical care rendered by Michelle L. Huebner, MD LT USN and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed before the filing of this complaint by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the care provided by Michelle L. Huebner, MD LT USN did not comply with the applicable standard of care. If the Court later determines that the plaintiff's 9(j) expert does not meet the requirements of Rule 702(b) or 702©, the plaintiff will seek to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and the plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

26. Dr. Huebner failed to possess and demonstrate the requisite degree of learning, skill and ability necessary to practice her profession in rendering treatment to the plaintiff, which others similarly situated in the same or similar communities ordinarily possess; failed to exercise reasonable and ordinary care and diligence in the use of her purported skill and in the application of her purported knowledge to the plaintiff; and, failed to exercise her best judgment in the care and treatment of the plaintiff as follows:

    a.      negligently failed to diagnose and treat the plaintiff for hereditary angioedema of the airway;

    b.      negligently failed to diagnose and treat the plaintiff for hereditary angioedema of the airway despite her reported, known and documented past medical history of hereditary angioedema of the airway;

c. negligently failed to diagnose and treat the plaintiff for hereditary angioedema of the airway despite her complaints of, among other things, sore throat, swollen throat and ear pain;

d. negligently failed to diagnose and treat the plaintiff for hereditary angioedema of the airway despite a clinical examination demonstrating a swollen throat;

e. negligently failed to diagnose and treat the plaintiff for hereditary angioedema of the airway despite the plaintiff's admission to the emergency department of Naval Hospital Camp LeJeune two months earlier based on an identical presentation and past medical history that resulted in intubation of the airway and transfer to an intensive care unit;

f. negligently failed to admit the plaintiff to the emergency department to observe her condition to she if it progressed and render appropriate medical care and treatment;

g. negligently discharged the plaintiff without ruling out hereditary angioedema of the airway as the cause of her presentation;

h. negligently diagnosed the plaintiff as suffering from tonsillitis despite her prior medical history, complaints and the clinical examination findings;

i. negligently diagnosed the plaintiff as suffering from tonsillitis despite a negative rapid strep screen and the lack of other confirming signs, symptoms or clinical findings suggestive of such a such a diagnosis; and

j. failed to otherwise exercise reasonable and ordinary care in her treatment of the plaintiff.

27. At all times relevant herein, Dr. Hueber was an employee, agent and/or representative of the United States of America and her negligence as set forth above is imputed to the United States of America by the doctrine of respondeat superior and/or the principal agency relationship.

28. As a direct and proximate result of Dr. Huebner's negligence, the plaintiff suffered, among other injuries, an anoxic brain injury resulting in permanent cognitive and neurologic deficits, including without limitation, memory, retention, processing and speech impairments, depression, and extremity weakness.

29. As a direct and proximate result of Dr. Huebner's negligence, the plaintiff has suffered and continues to suffer severe personal injuries, including, but not limited to, past and future medical care and expenses; past and future permanent physical and mental impairments; past and future pain and suffering and mental anguish; and past and future wage loss and loss of earning capacity. Such injuries, in all probability, are permanent in nature.

30. The plaintiff objects to N.C.G.S. § 90-21.19 ("the cap on noneconomic damages") as unconstitutional. The cap on noneconomic damages denies medical malpractice plaintiffs, including the plaintiff in this action, the right to a jury trial, due process of law, equal protection under the law, and the right to open courts, violates the separation of powers, and confers an exclusive emolument on health care providers, in violation of the United States and North Carolina constitutions. The cap on noneconomic damages violates the Seventh and Fourteenth Amendments of the United States Constitution and Article I, sections 6, 18, 19, 25 and 32, Article IV, sections 1 and 13 of the North Carolina Constitution. WHEREFORE, the plaintiff prays that she have and recover judgment against the defendant, the United States of America, as follows:

1. Compensatory damages in the amount of Five Million Dollars $5,000,000.00;
2. Costs as allowed by law; and
3. Such other and further relief as the Court deems just and proper.

Respectfully submitted this the 1st day of April, 2014.

s/ C. Jeff Warren
N.C. Bar No. 18044
Attorney for the Plaintiff

s/ Chris M. Kallianos
N.C. Bar No. 14202
Attorney for the Plaintiff

Warren & Kallianos
301 S. McDowell St., Suite 130
Charlotte, N.C. 28204
Phone: (704) 377-7777
Fax: (704) 339-0442
jwarren@charlotteinjurylaw.com
ckallianos@charlotteinjurylaw